Thomas A. Aurelio, J.
This is a motion by defendant upon written notice to vacate and set aside the jury verdict herein and for a new trial upon the alleged ground that it was ‘ ‘ the product of sharp practice upon the court ’ ’.
*414 The court reserved decision on another motion made by defendant, upon rendition of the verdict by the jury, to set it aside upon the usual grounds except excessiveness. This motion is denied. A pure question of fact was presented for the jury’s consideration and resolved in plaintiffs’ favor. Plaintiffs’ version of the unfortunate occurrence was not improbable or implausible. The jury accepted as credible infant plaintiff’s story, a lad of one month short of 12 years at the time of the accident, as to how, while he with other boys of his age was stealing a ride on defendant’s freight train, he was wantonly and negligently frightened by an agent of defendant railroad and caused to fall under a moving freight car, as a result of which he lost his right arm. The verdict for the infant was for $25,000 only, and I would have had no hesitancy to set aside had plaintiff so moved, on the ground of inadequacy. Since plaintiff is content with the amount of the verdict, defendant cannot justly urge its inadequacy as a ground for setting it aside and for a new trial. Then jurors being required by law to agree 'before a verdict can be reached, an occurrence of this kind is not unusual. The verdict in favor of the infant’s mother for loss of services and medical expenses was in the sum of $5,000, undoubtedly a fair and reasonable amount, which indicates the matter was given due consideration by the jury.
The other motion to set aside the verdict and for a new trial is based on defendant’s claim that a witness, Richard Flaherty, a boy now 16 years of age and 13 years old at the time of the occurrence, was spirited away for the purpose of evading service of a subpoena to testify as a defense witness. It appears that this boy, two years after the accident, gave defendant’s investigator, in the presence of his father, a signed statement (also signed by the father) to the effect that he was riding the freight train with infant plaintiff and other boys; that there was no railroad employee or watchman on the train chasing them; that infant plaintiff was standing on top of the freight train with his back to a tunnel and failed to ‘ ‘ duck ’ ’ in time when he (Flaherty) yelled “ Duck ” at the time the train went through the tunnel, as a result of which infant plaintiff ‘1 hit his head on the tunnel wall and fell off in between the cars ”. This boy testified at a previous trial, which ended in a disagreement. His testimony was to the effect that he did not remember and was not sure. The Justice presiding at that trial excluded the written statement.
It seems defendant tried to serve a subpoena on this boy but was unable to do so because he was not home. It does not ■appear what effort was made to serve the subpoena upon the *415 boy, as there is no affidavit by the process server. Notwithstanding the importance of this boy’s testimony, at least to the extent of confronting him with his signed statement, which would be admissible upon laying the proper foundation therefor, defendant at no time applied to the court for additional time to find the boy or for some other appropriate relief because of the peculiar or suspicious disappearance of the boy from his home while the trial was in progress. The trial began November 3, 1958 and concluded November 6, 1958. Defendant called the boy’s father as a witness and all he testified to was that the boy had not been home the night before. No other questions were asked of him.
It now appears from the affidavit, sworn to November 7, 1958, of Mary E. Flaherty, mother of the boy Flaherty, “that on Saturday, November 1, 1958 a man who identified himself as an attorney for William Busweiler came to my house and spoke with Richard Flaherty and told him to avoid accepting any subpoena. That on this occasion the man told me and my daughter to tell anyone from the railroad that he never appeared at my house. That because of this my son, Richard Flaherty, remained away from home for the first and only time in his life. That the day the railroad came to subpoena me and my son, Richard was not around.”
A representative of plaintiffs’ attorney who had occasion to go to the Flaherty home denies he ever represented himself ■as an attorney or advised or suggested that the. Flaherty boy avoid service of a subpoena.
Since defendant took no action when it discovered an important witness had disappeared and chose to proceed with the trial and take its chances of a favorable verdict, its application for a new trial after an adverse verdict requires a denial of the motion.
Accordingly, both motions are denied.